IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| REIDI J. JACKSON, #1164177 | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-03-373 |
| | § | |
| JAMES MITCHELL, ET AL. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Reidi J. Jackson, proceeding *pro se*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983, complaining that Defendants at the Matagorda County Jail violated his rights under the Eighth Amendment.  Currently before the Court is Defendant Mitchell, Miles, Lewis, Gartica And Walls' Motion for Summary Judgment, in which they claim entitlement to qualified immunity.  On January 24, 2004,  Plaintiff  filed a "Motion in Opposition to Defendants Mitchell, Miles, Lewis Gartica and Walls' Motion for Summary Judgment."  Having considered all pleadings and summary judgment evidence, this Court makes the following report and recommendation to the District Court.

Jackson was arrested and confined in the Matagorda County Jail on March 12, 2002 until May 16, 2003, when he was transferred to the Texas Department of Corrections, Institutions Division.  He alleges that beginning on January 31, 2003, when he experienced "psychological problems," he was discriminated against when he was denied his medication on three different occasions by Defendant nurse Walls, and when, by order of Defendant Captain Miles, he was stripped of all clothing and possessions and placed in a "psychological observation cell," where the temperature allegedly hovered between 30 to 50 degrees.  He was denied a blanket or cover of any sort, was refused some meals, and often fed only bread and ham.  He also asserts that he was unable to sleep due his living conditions,  was denied a shower for days at a time, and was denied any communication with his

lawyer or family.  After spending approximately eleven days in the psychiatric cell, Jackson was

moved to a cell in solitary confinement "with the blue suicide precaution vest/blanket."  His meals

were fed to him on paper plates and he was not allowed eating utensils.  Jackson filed a grievance on

March 9, 2003, complaining of his confinement in the psychological observation cell; being refused

meals and insufficient food; the cold temperature in the observation cell and lack of cover; being

forced to live in unsanitary living conditions; refusal of medical treatment; and, denial of due process

because of his confinement and inability to obtain writing material.

Defendants have provided copies of Jackson's arrest records, which reveal a lengthy arrest

history.  On March 12, 2002, Jackson was arrested under the authority of a warrant charging him with

aggravated robbery and under complaint charging him with evading arrest.  He was placed in

Matagorda County Jail as a pre-trial detainee.  On the date marking the beginning of Jackson's

complaints, January 31, 2003,  Matagorda County Jail records reveal that Jackson had balked when

he and other jail inmates were ordered to return to their cells. [1]  Once in his cell, Jackson began

banging the walls of his cell with his hairbrush.  He was asked to stop, and when he refused, a

disciplinary case was written.  Officer Teeler, who had been present during the entire situation,

returned to Jackson's cell to speak to him after writing the report, and found Jackson standing on the

commode in his cell, tied to the bars with a sheet around his neck; Jackson was removed to a padded

cell by three officers.  Three days later, after he was apparently removed from the padded cell to a

regular cell, Jackson was found lying on the floor next to two razors.  He stated that he had swallowed

some pills and two razor blades.  Jackson was transported to Methodist Hospital in

---

[1] Defendants' Motion for "Summary Judgment, Exhibit A, Jail Incident Report.

Houston, where it was confirmed that he had indeed swallowed two razor blades.[2]  Jackson was held

for observation and released.  Back at the jail on February 10, 2003, officers were informed by

another inmate that Jackson had again swallowed two razorblades. When prison officials arrived at

Jackson's cell, he was caught trying to swallow a screw; he was transported to the Matagorda General

Hospital emergency room; no razorblades were found in his body, but a straightened paper clip

capable of opening handcuffs was found in his pants pocket.  On February 13, 2003, Jackson cut his

wrist; however, the wound was not serious and was treated with a band-aid.[3]  Later in the day, a jail

official observed Jackson swallow ½ of a razorblade; he was transported to the emergency room

where x-rays revealed that he had swallowed a razorblade and a paper clip.  (Jail officials surmised

that Jackson was gaining access to the razorblades by swallowing them, passing them and retrieving

them from his feces.)   After this incident, Jackson was moved to a padded isolation cell for

observation, and was placed on a 15 minute watch.  Between February 15, 2003 and April 23, 2003,

Jackson attempted to swallow razorblades and a pin on two more occasions.  He also feigned a

fainting spell in the shower, and later remarked that he just wanted to "make life miserable" for the

staff.  Jackson was also verbally abusive and used foul language; he exhibited lewd conduct, and was

rebellious, disrespectful, rude and acted "like a childish untamed individual."[4]  During the time

Jackson was confined in a padded cell, he was allowed to call his attorney and was given a legal form

when it was requested.  Jackson stated to Defendant Miles that his actions were for only for fun, that

---

[2] *Id.*

[3] Defendants' Motion for Summary Judgment, Exhibit H.

[4] Defendant's Motion for Summary Judgment, Exhibit A.

he had no intention of harming himself.[5]  On May 16, 2003, Jackson entered the Texas Department of

Corrections.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogato-

ries, and admission on file, together with affidavits, if any, when viewed in the light most  favorable

to the non-movant, "show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249-50 (1986).  The Court does not weigh the evidence, assess its probative value, or resolve any

factual disputes.  *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996).

However, the movant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to

establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir.

1996).  Factual controversies will be decided in the nonmovant's favor only when both sides have

presented evidence showing that there is an actual controversy.  *Burns v. Harris County Bail Bod Bd.,*

139 F.3d 513, 518 (5th Cir. 1998).  In the absence of any proof, the Court will not assume that the

nonmovant could or would prove the necessary facts. *Id.*

42 U.S.C. § 1983 authorizes suits against state and local government officials who violate a

person's constitutional rights.  In *Estelle v. Gamble*, the Supreme Court held that the Eighth

Amendment's proscription of cruel and unusual punishments forbids jail officials to be deliberately

indifferent to inmates' serious medical needs because such indifference is itself cruel and unusual

punishment.  429 U.S. 97, 104, (1976).  Pretrial detainees like Jackson also have a right to be free

from jail officials' deliberate indifference to their serious medical needs.  *Hare v. City of Corinth,*

*MS.,* 74 F.3d 633, 643 (5th Cir. 1996)(*en banc*).  This right springs from both procedural and

---

[5]  Defendant' Motion for Summary Judgment,  Exhibit A.

substantive due process and is at least as great as that mandated by the Eighth Amendment. *Id.*, *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To establish a violation of this right, an inmate must show that he was subjected to a substantial risk of serious harm. The inmate must also prove that the jail official was subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and then actually drew such an inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Harris v. Hegmann*, 198 F.2d 153, 159 (5th Cir. 1999). Finally, a pretrial detainee's suicidal tendencies are a serious mental health and safety risk to which jailers cannot be deliberately indifferent. *See Flores v. County Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). The inmate must establish that the jail official's response to the perceived risk of harm show that official's deliberate indifference. *Farmer*, 511 U.S. at 844-45.

In this case, the medical records reveal that Defendants took every available measure, short of placing Jackson in physical restraints, to protect him from himself and insure his safety. Jail records show that Jackson was not safe in a regular cell as he showed a propensity for swallowing razorblades and other metal objects when left unrestrained and unmonitored; and, he once attempted to hang himself from the cell bars with a bed sheet. Jail records further indicate that each time Jackson was suspected of having swallowed razorblades, he was rushed to the emergency room. After it became evident that Jackson could not be left unmonitored, necessary steps were taken to control and protect him and he was placed in a padded observation cell. Jackson complains that the observation cell was uncomfortable and cold as he was denied clothes and cover. The necessity of denying him these articles, however, is evident as Jackson had previously used them to attempt suicide and had managed to hide razorblades in articles of clothing. The Court would also note that the Constitution "does not mandate comfortable prisons, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and the uncomfortable conditions in which Jackson found himself were necessitated by his own actions and

inability to control himself, and designed solely for his safety and protection. Moreover, Jackson does not allege he suffered any harm as a result. Similarly, Jackson was served his meals on paper plates and was denied eating utensils because of his past suicide attempts and known propensity for swallowing metal objects. With respect to the food that he was served, there is no evidence that Jackson was ever denied a meal or served food unlike that served to the other jail inmates. Between March, 2003 and May, 2003, Jackson's attempts at self-mutilation necessitated numerous trips to and from the hospital and it is quite conceivable that he missed a few meals while in transit. Jackson's allegations concerning his conditions of confinement before and during his stint in the observation cell are frivolous and fail to state a claim on which relief can be granted. Any actions taken by jail officials, while seemingly austere, were nonetheless necessary in order to control Jackson, provide for his safety and protect him from himself.

Jackson also alleges that Defendant Walls was deliberately indifferent to his serious medical needs when she refused to give him his prescribed medication. Jackson did not name the medication that he was refused, when it was refused, the reason for the refusal or the harm that he suffered, or could have suffered, as a result of the refusal. In nurse Walls' affidavit, she states that Jackson did not suffer from any medical condition requiring him to take medication regularly. Medications which were necessary to provide him with greater comfort from having metal objects in his body was administered when ordered, as evidenced by the jail records.[6] Jackson's allegations to the contrary are nothing more than conclusory statements; such unsupported declarations do not establish a claim under Section 1983. *See Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). The facts as alleged and

---

[6] *See* Defendants' Motion for Summary Judgment, Exhibit H.

developed, and the summary judgment evidence, simply do not support an inference of deliberate indifference.

Jackson's claim that his rights to due process were violated because he was not allowed to possess writing material is also without merit.  An inmate alleging denial of access to the courts must demonstrate an actual injury stemming from the Defendants' alleged unconstitutional conduct.  *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996).  A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice.  *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991).  Jackson has wholly failed to identify any actual injury stemming from his inability to access writing materials.  Further, the Court notes that on March 4, 2003, Jackson was taken to the control room so that he could call his attorney.

The facts as alleged and developed also reveal that claims against Sheriff Mitchell should be dismissed.  In order to successfully plead a cause of action in a civil rights case, a Plaintiff must enunciate a set of facts that illustrate the Defendants participation in the alleged wrong.  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  No facts have been alleged to show that Sheriff Mitchell participated in the alleged civil rights violations.  The only way that he could possibly be implicated in Jackson's claims is through his supervisory capacity.  Under Section 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory.  A supervisor may be held liable if either of the following exists:  (1)  his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations.  *Thompkins v. Belt*, 818 F.2d 298, 303-304 (5th Cir. 1987).  As has been shown, neither condition is satisfied.

7

Accordingly, for all the aforementioned reasons, it is the **RECOMMENDATION** of this Court that Defendants' Motion for Summary by Judgment (Instrument no. 30) be **GRANTED and the instant cause be DISMISSED with prejudice as frivolous and lacking any basis in law and fact**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **August 26, 2005**, in which to have written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections **SHALL** be mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this the ___10th___ day of August, 2005.

John R. Froeschner
United States Magistrate Judge